**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| MICHAEL A. HARNEY, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | CAUSE NO.: 2:17-CV-199-JEM |
| NANCY A. BERRYHILL, | ) | |
| Deputy Commissioner for Operations, | ) | |
| performing the duties and functions not | ) | |
| reserved to the Commissioner of Social | ) | |
| Security, | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Michael A. Harney

on April 28, 2017, and on an Opening Brief [DE 13], filed by Plaintiff on September 19, 2017.

Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for

further proceedings. On October 30, 2017, Defendant filed a response, and on November 10, 2017,

Plaintiff filed a reply. For the following reasons, the Court grants Plaintiff's request for remand.

**I.      Procedural Background**

On July 8, 2013, Plaintiff filed an application for disability insurance benefits alleging that

he was disabled starting on July 3, 2013. Plaintiff's application was denied initially and upon

reconsideration. On November 10, 2015, Administrative Law Judge ("ALJ") George Michael

Gaffaney held a hearing at which Plaintiff, represented by counsel, appeared and testified. Plaintiff's

wife and a vocational expert ("VE") also testified. On December 28, 2015, the ALJ issued a decision

finding that Plaintiff was not disabled.

The ALJ made the following findings under the required five-step analysis:

1.      The claimant met the insured status requirements of the Social Security Act
through December 31, 2017.

2. The claimant has not engaged in substantial gainful activity since July 3, 2013, the alleged onset date.

3. The claimant has the following severe impairments: post-status bilateral knee surgery; frozen left ankle (congenital); and obesity.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. The claimant has the residual functional capacity to perform light work, lifting twenty pounds occasionally and ten pounds frequently, except that he can only stand and walk for two hours in an eight-hour work day and can sit for six hours in an eight-hour work day and requires a cane to ambulate. In addition, he can never climb ladders, kneel, crouch, or crawl; he can occasionally climb stairs, stoop, and balance; and he must avoid all exposure to hazards.

6. The claimant is unable to perform any past relevant work.

7. The claimant was 38 years of age, which is defined as a younger individual age 18-49, on his alleged disability onset date.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant was not under a disability as defined by the Act from July 3, 2013, his alleged onset date, through the date of the ALJ's decision.

On February 23, 2017, the Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate

Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## II.    Standard of Review

The Social Security Act authorizes judicial review of the final decision of the Agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse

the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his or her analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## III.    Analysis

Plaintiff argues that the ALJ failed to properly support his step three finding that Plaintiff did not meet a listing and that the ALJ erred in his analysis of Plaintiff's RFC. Defendant argues that the ALJ's decision is supported by substantial evidence.

Appendix 1 of the disability regulations contains a "Listing of Impairments" that the SSA has predetermined are disabling regardless of a claimant's age, education, or work experience. 20 C.F.R. § 404.1525(a). The Listings first enumerate criteria necessary to establish that a claimant's diagnosis is based on acceptable medical evidence. 20 C.F.R. § 404.1525(c)(2). The remaining

criteria establish the severity the impairment much reach to be considered disabling. 20 C.F.R. §
404.1525(c)(2). For example, a claimant meets Listing 1.02 for major dysfunction of a joint if he
has a "gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis,
instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal
motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint
space narrowing, bony destruction, or ankylosis of the affected joint(s)." To meet the severity of the
listing for a hip, knee, or ankle dysfunction, a claimant must also show "an inability to ambulate
effectively," which is defined elsewhere as "having insufficient lower extremity functioning" to
permit ambulation without the use of two canes or a walker. Effective ambulation requires an ability
to "sustain[] a reasonable walking pace over a sufficient distance to be able to carry out activities
of daily living . . . [E]xamples of ineffective ambulation include . . . the inability to walk a block at
a reasonable pace on rough or uneven surfaces . . . [and] the inability to carry out routine ambulatory
activities, such as shopping." Listing 1.00(B)(2)(b); Listing 1.02.

In general, the claimant bears the burden of proving that his condition meets all the criteria
of a Listing. *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006). However, an ALJ's Listing
determination "must discuss the listing by name and offer more than a perfunctory analysis of the
listing." *Barnett*, 381 F.3d at 668 (citing *Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003);
*Scott*, 297 F.3d at 595-96; *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)). If evidence exists
in the record that might establish that a Listing's criteria have been met, an ALJ cannot simply
ignore it without explanation. *Ribaudo*, 458 F.3d at 583. In this case, the ALJ's analysis of Listing
1.02 stated, in its entirety, "The claimant does not meet Listing 1.02, which addresses major
dysfunction of a joint. The claimant did not establish that he is unable to ambulate effectively."

Plaintiff argues that this statement is inadequate, because, while Plaintiff only needs one cane to ambulate, his ambulation is ineffective in that he is unable to walk on uneven surfaces; cannot carry out routine activities, such as shopping, without the use of a wheelchair; and cannot stand for more than ten minutes. Defendant argues that Plaintiff's claim he cannot stand for more than ten minutes "speaks to his need to sit, not to his ability to effectively ambulate." But Defendant does not explain how a person who needs to sit after ten minutes can be engaged in effective ambulation.

Defendant also argues that Plaintiff has not presented sufficient evidence to meet his burden to show he meets the Listing. Whether Plaintiff's evidence is adequate to find the criteria of the Listing are satisfied is a call for the ALJ, not the Court, to make. *See Clifford*, 227 F.3d at 869 ("We review the entire administrative record but do not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment for that of the Commissioner."). However, the lack of discussion of the evidence that might show Plaintiff meets the Listing makes it impossible for the Court to tell whether the ALJ acknowledged and rejected the evidence or just ignored it entirely. Accordingly, the Listings section of the ALJ's opinion provides the type of "perfunctory" analysis for which remand is appropriate. *See Scott*, 297 F.3d at 596 (stating that when the analysis of the evidentiary record is so "perfunctory" that the court cannot meaningfully review an ALJ's Listing determination, remand is required); *see also Clifford*, 227 F.3d at 874 ("For meaningful appellate review, however, we must be able to trace the ALJ's path of reasoning.").

### B.  RFC Analysis

Plaintiff also argues that the ALJ's RFC analysis is "short, conclusory, and replete with errors." Defendant argues that the RFC analysis is supported by substantial evidence and that the ALJ's opinion is brief only because there is little medical evidence to support Plaintiff's claim of

disability.

The RFC is an assessment of what work-related activities the claimant can perform despite his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *see also* 20 C.F.R. §§ 404.1545(a)(1); 416.1545(a)(1). In evaluating a claimant's RFC, an ALJ is expected to take into consideration all of the relevant evidence, including both medical and non-medical evidence. *See* 20 C.F.R. §§ 404.1545(a)(3); 416.945(a)(3). "In determining an individual's RFC, the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009) (citing SSR 96-8p, 1996 WL 374184, (July 2, 1996)); *Golembiewski v. Barnhart*, 322 F.3d at 917.

Plaintiff's first criticism of the ALJ's RFC analysis is that the RFC statement itself is internally inconsistent, because the ALJ found Plaintiff capable of "light work" then limited him to no more than two hours per day of walking. However, there is no inconsistency in the ALJ's phrasing of the RFC, as it is clear that the ALJ intended "light work" to describe Plaintiff's lifting capacity only; the sit/stand restrictions were expressed as an additional limitation. Moreover, the ALJ's controlling hypothetical question to the VE at the hearing mirrored the RFC finding in his opinion, describing an individual who could lift twenty pounds occasionally and ten pounds frequently, but who could only stand/walk for two hours and sit for six hours in a work day. Therefore, Plaintiff's criticism related to the phrasing of the RFC is unfounded.

Plaintiff's other criticisms, however, have more merit. Although medical evidence "may be discounted if it is internally inconsistent or inconsistent with other evidence," *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995) (citing 20 C.F.R. § 404.1527(c)) (other citations omitted), the ALJ

"must provide a 'logical bridge' between the evidence and his conclusions," *O'Connor-Spinner*, 627 F.3d at 618. The ALJ failed to build that logical bridge in this case. First, he found that "normal observations" on medical exams contradicted Plaintiff's allegations regarding the severity of his impairments. However, as Plaintiff points out, most of the exam findings that the ALJ listed to support that contention have no relation to Plaintiff's allegations. For example, the ALJ stated that Plaintiff had normal cardiovascular function, no spinal or paraspinal tenderness, and 5/5 grip strength and normal fine manipulative ability. But Plaintiff does not claim to have any disorders affecting his heart, spine, or hands; his chief complaints arise from a congenital fusing of his left foot and ankle, problems with his knees, and the effects of sleep apnea on his ability to function during the day. Therefore, there is no logical basis for the ALJ's statement that exam findings about Plaintiff's heart, spine, and hands contradict Plaintiff's allegations. Compounding the error, the ALJ then mischaracterized or exaggerated the exam findings that did support Plaintiff's contentions, listing findings of "3-4/5 strength" in his lower extremities, "reduced range of motion in his bilateral knees and frozen left ankle," and only "minor improvements in function" after ten sessions of physical therapy among the "normal" findings that allegedly contradicted Plaintiff's claims.

Not only is the evidence relied on by the ALJ less robust than suggested, but the ALJ completely ignored other evidence in the record of Plaintiff's difficulties and limitations, including the physical therapist's description of Plaintiff's functional mobility after ten sessions as encompassing the abilities to "ambulate a couple blocks" and "stand 5-10 minutes." AR 345. Also omitted were the notations from Plaintiff's doctor indicating that, after completing his course of physical therapy, Plaintiff was still experiencing "pain as well as buckling of his knee," and that the "weakness and buckling" were more troublesome to him than the pain. AR 347, 349 In short, it

appears that the ALJ impermissibly ignored evidence in the record that countered his conclusion. *See Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) ("A decision denying benefits need not discuss every piece of evidence, but if it lacks an adequate discussion of the issues, it will be remanded."); *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003) ("[T]he ALJ may not ignore an entire line of evidence that is contrary to the ruling.").

Plaintiff further criticizes the ALJ's RFC assessment by noting that there is no "logical bridge" between the ALJ's analysis of the opinion evidence and his RFC findings. The ALJ stated that he gave "limited weight" to the opinions of state agency physicians because, in the ALJ's words, "there is no evidence that the claimant is able to stand and walk for only two hours out of an 8-hour day." Yet the ALJ then adopted precisely the finding for which he declared there was "no evidence," leaving the Court unable to determine how he arrived at his conclusion. Defendant "submits that this inconsistent statement was a harmless typographical/writing error." This error alone, in an otherwise well-supported RFC assessment, might indeed be harmless; as Defendant points out, the ALJ's error may have helped Plaintiff. However, when combined with the other errors and omissions in the ALJ's opinion, this puzzling assessment of the opinion evidence leaves the Court unable to determine the basis on which he rested his assessment of Plaintiff's RFC.

In addition, Plaintiff contends that the ALJ erred in failing to address Plaintiff's obstructive sleep apnea in any significant way in his RFC analysis. The ALJ found, in step two of his analysis, that there was "no evidence" that Plaintiff's sleep apnea "results in even minimal functional limitations." After a sleep study confirmed a diagnosis of severe obstructive sleep apnea, characterized by an apnea/hypopnea index over 30, Plaintiff was fitted with a continuous positive airway pressure (CPAP) device. A second sleep study conducted with the device showed a decrease

in his apnea/hypopnea index, to 19.7 events per hour. However, Plaintiff and his wife both testified that, despite the use of a CPAP device, Plaintiff's condition leaves him very sleepy during the day, to the point that he falls asleep even in noisy environments. While it is not the job of this Court to assess the weight of the evidence, the ALJ's failure to acknowledge the evidence that exists leaves the Court unable to trace the path of his reasoning from the evidence to his conclusions.

The Court is also concerned that the ALJ failed to consider the combination of Plaintiff's impairments. "Although [] impairments may not on their own be disabling, that would only justify discounting their severity, not ignoring them altogether. Moreover, . . . an ALJ must consider the combined effects of all of the claimant's impairments, even those that would not be considered severe in isolation." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *see also Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011) ("Even if each problem assessed separately were less serious than the evidence indicates, the combination of them might be disabling."); *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008) ("[A]n ALJ is required to consider the aggregate effects of a claimant's impairments, including impairments that, in isolation, are not severe.") (citing 20 C.F.R. § 404.1523); *Golembiewski*, 322 F.3d at 918. Although the ALJ listed obesity among Plaintiff's severe impairments and provided a paragraph summarizing some of the regulations that govern the SSA's analysis of obesity, the opinion does not include any actual analysis of how Plaintiff's obesity may affect his ability to work. This is particularly concerning given that Plaintiff, at six feet, two inches tall and 330 pounds, has a BMI in excess of 40 and has reported difficulties standing and walking. The Social Security characterizes a BMI over 40 as as Level III, or "extreme obesity . . . representing the greatest risk for developing obesity-related impairments." "Social Security Ruling 02-1p requires an ALJ to consider the exacerbating effects of a claimant's obesity on her underlying

conditions (even if the obesity is not itself a severe impairment) when arriving at a claimant's RFC," *Hernandez v. Astrue*, 277 F. App'x 617, 623-24 (7th Cir. 2008) (citing SSR 02-1p, 2002 WL 34686281 (Sept. 12, 2002)) (other citations omitted); *see also Martinez*, 630 F.3d at 698–99 ("The gravest error in an opinion with a number of contenders for that distinction is the failure to consider the bearing of [the plaintiff]'s extreme obesity. The administrative law judge mentioned in passing that it is a severe impairment but did not consider its significance in relation to [the plaintiff]'s knee. It is one thing to have a bad knee; it is another thing to have a bad knee supporting a body mass index in excess of 40."). In this case, the ALJ found that Plaintiff could stand and walk for up to two hours in an eight-hour work day, despite the physical therapist's assessment that Plaintiff could stand for just 5-10 minutes or walk "a couple of blocks" and Plaintiff's own testimony about his difficulties standing and walking.

On remand, the ALJ is instructed to fully articulate whether or not Plaintiff meets the listing for major dysfunction of a joint, and, if he concludes again that Plaintiff does not meet the listing, to follow the applicable regulations in determining what limitations Plaintiff experiences, and to fully explain how each of the limitations, alone and in combination, are incorporated into the RFC, including Plaintiff's difficulties with walking and standing and his claimed daytime sleepiness.

**IV.    Conclusion**

For the foregoing reasons, the Court hereby **GRANTS** the relief requested in the Opening Brief [DE 13] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 7th day of May, 2018.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc:    All counsel of record